UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JAMES RICHARDSON                                                                                    PLAINTIFF

v.                                                                   CIVIL ACTION NO. 3:10cv198-DPJ-FKB

MISSISSIPPI DEPARTMENT OF HUMAN SERVICES                            DEFENDANT

ORDER

This employment-discrimination case is before the Court on the Motion of Defendant Mississippi Department of Human Services ("DHS") for Summary Judgment [21]. The Court, having considered the issues and the parties' submissions in light of the applicable standards, finds that DHS's Motion should be granted in part but otherwise denied.

I.      Facts and Procedural History

Richardson, an African-American male, began his employment with DHS in 1999. In 2002, he was promoted to the position of Special Projects Officer IV in the Office of Monitoring with the Division of Program Integrity. In that position, in the fall of 2007, Sandra Hodges, a white female, was his supervisor.

Richardson claims that Hodges subjected him to a hostile work environment during his time with the Division of Program Integrity. He contends that this harassment consisted of disclosing confidential medical information, denying a leave request while allowing the same request when made by female co-workers, giving Richardson a female co-worker's uncompleted assignments, monitoring his work, calls and visitors while other employees were not monitored, and unfairly criticizing his performance. He further alleges that Hodges allowed a female co-worker to yell at him, discussed his work performance with his co-workers, required him to train white female co-workers, and told other employees to watch out for Richardson because he had a

history of harassing female employees while turning a blind eye to a white male co-worker's sexual harassment.  Finally, Richardson claims that he was unfairly denied multiple promotions while with the Division of Program Integrity, including a supervisor position in 2003 and unspecified positions in 2007.

In September 2007, Richardson made a verbal objection about Hodges to Janie Howell, the division director.  Howell instructed Richardson to put his objection in writing—a requirement that was not applied to a female co-worker claiming harassment.  On January 11, 2008, Richardson submitted his written objection.  On January 24, 2008, Mark Smith, DHS Deputy Administrator for Operations, became Richardson's supervisor while DHS investigated Richardson's allegations.  That investigation confirmed that Richardson was subjected to a hostile work environment, disparate treatment, and retaliation.

Richardson filed his Charge of Discrimination with the EEOC on May 21, 2008.  In his charge, he claimed to have been subjected to a hostile work environment, disparate treatment, and retaliation.  Specifically, he complained that his "harassers ha[d] not been moved or reprimanded," that he remained under their report, and that his request for a transfer had not been approved.  Mot. Summ. J. [21], Ex. A, Richardson Dep., at Ex. 8.  On September 29, 2009, the EEOC found reasonable cause and issued a right to sue letter.

Richardson filed this lawsuit against DHS on January 4, 2010, asserting Title VII claims for race and sex discrimination, retaliation, and hostile work environment, in addition to state-law claims for negligent and intentional infliction of emotional distress.[1]  Certain defendants

---

[1]The Complaint also includes claims brought pursuant to 42 U.S.C. §§ 1981 and 1983 as well as an Equal Protection claim.  DHS moved for summary judgment on these claims, and Richardson did not address this portion of the motion in his response.  The Court concludes that

were dismissed on motion, and the remaining Defendant, DHS, moved for summary judgment on all claims. The Court has subject-matter and personal jurisdiction and is prepared to rule.

II.     Standards

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor

---

Richardson has abandoned these claims. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff's] failure to pursue this claim beyond [the] complaint constituted abandonment."). Regardless, DHS's unrebutted arguments on these claims appear meritorious. As such, these claims should be dismissed.

of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

One final procedural standard is crucial to this Order. Richardson attached a number of exhibits to his Response, including an April 3, 2008, memorandum from the Personnel Director of DHS's Division of Human Resources to the Director of the Division of Human Resources ("Investigative Report") summarizing the findings and conclusions of DHS's internal investigation into Richardson's sexual harassment complaint. Pl.'s Resp. [26], Ex. C. As DHS correctly observes, the memorandum, like some of Plaintiff's other exhibits, remains unauthenticated. DHS therefore argued that these exhibits should not be considered.[2]

There is little doubt that DHS's position was correct before the December 1, 2010, amendments to Rule 56 of the Federal Rules of Civil Procedure. Until then, numerous Fifth Circuit cases observed that unauthenticated documents constitute "improper summary judgment evidence." *See*, *e.g.*, *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Under that authority, Richardson's failure to authenticate the documents would have been fatal. But the amendments to Rule 56 create a new test. Rule 56(c)(1)(B) now states:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

---

[2]Exhibit "A" is Richardson's Declaration, which is in an admissible form for summary-judgment purposes. And although Richardson did not cite his own deposition testimony, the Court nevertheless reviewed the entire record and found testimony sufficient to satisfy Rule 56(c) as to Plaintiff's Exhibits "E"; "G"; and "J." Exhibits "B"–"D"; "F"; and "H"–"I" are not authenticated in the record.

4

>   (B) showing that the materials cited do not establish the absence or
>   presence of a genuine dispute, or that an adverse party *cannot produce*
>   admissible evidence to support the fact.

Fed. R. Civ. Pro. 56(c)(1)(B) (emphasis added).

When a party has failed to offer evidence in an admissible format, the opposing party may object pursuant to Rule 56(c)(2), which states that "[a] party may object that the material cited to support or dispute a fact *cannot be presented in a form* that would be admissible in evidence." (Emphasis added). The commentary explains the new procedure:

>   Subdivision (c)(2) provides that a party may object that material cited to support
>   or dispute a fact *cannot be* presented in a form that would be admissible in
>   evidence. The objection functions much as an objection at trial, adjusted for the
>   pretrial setting. The burden is on the proponent to show that the material is
>   admissible as presented *or to explain the admissible form that is anticipated*.

Fed. R. Civ. Pro. 56, cmt (emphasis added). This burden shifting is consistent with the Fifth Circuit's pre-amendment practice allowing consideration of documents that fail to "comply with the requirements of Rule 56 *if there is no objection* to their use." *Eguia v. Tompkins*, 756 F.2d 1130, 1136 (5th Cir. 1985) (emphasis added).

In the present case, DHS never makes a formal objection. *See generally* Reply [34]. It does, however, argue that the Court should not consider the unauthenticated documents. The bigger problem is that DHS did not make the right objection. Under the new version of Rule 56, DHS could object that the disputed documents "cannot be presented in a form that would be admissible." Fed. R. Civ. Pro. 56(c)(2). But the nature of the disputed documents—DHS's own Investigative Report and an EEOC determination—suggests that authentication would be simple. And Plaintiff has not been called upon to "explain the admissible form that is anticipated." Fed. R. Civ. Pro. 56, cmt.

It is beyond frustrating that after ignoring two show cause orders the Plaintiff would test fate by relying on unauthenticated evidence and then fail to even respond to DHS's argument that the evidence is not competent. On the other hand, DHS committed procedural error by failing to make the correct objection under Rule 56(c)(2). Ultimately, there is no argument or indication that the exhibits could not be offered an admissible form, and this matter should be decided on the merits. The Court will therefore consider the exhibits to the extent they otherwise survive hearsay and other objections to admissibility. *See*, *e.g.*, *Martin v. John W. Stone Oil Distrib. Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (holding that hearsay is not competent summary judgment evidence).

III.    Analysis

    A.    Race and Sex Discrimination

        1.    Disparate Treatment

Title VII discrimination claims follow the *McDonnell-Douglas* burden-shifting analysis. First, the plaintiff must establish a prima facie case of discrimination. *See Britt v. Grocers Supply Co., Inc.*, 978 F.2d 1441, 1450 (5th Cir. 1992) ("[I]t is relatively easy . . . for a plaintiff to establish a prima facie case . . . ."). The test requires proof of the following:

> (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009); *see McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

If the plaintiff establishes a prima facie case, an inference of discrimination is raised, and the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 259. If such a reason is demonstrated, the plaintiff must ultimately show "that the employer's explanation is merely a pretext for" discrimination. *Id.* In the present case, DHS focuses its efforts on Plaintiff's prima facie case and never offers a non-discriminatory reason for its actions.

DHS argues that Richardson cannot establish a prima facie case of discrimination because he has presented evidence of neither an adverse employment action nor a similarly situated employee outside his protected class who was treated more favorably under nearly identical circumstances.[3] Richardson's Response points to a number of separate purported adverse employment actions he contends satisfy his burden at the prima facie stage: (1) he was denied the opportunity to interview for promotions; (2) he was required to use accumulated leave to vote; (3) he was not allowed to take leave without prior approval; (4) he was required to call in daily while on FMLA leave; (5) he was required to put his harassment complaint in writing; (6) he was reprimanded for making an allegedly derogatory comment; and (7) he was denied training. There are a number of problems with Plaintiff's allegations.

---

[3]DHS also argues that the claims exceed the scope of the EEOC charge. The permissible scope of a Title VII claim is limited to the allegations stated in the charge and "the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). The issue is not explored in much depth by the parties, but the Court notes that Richardson's charge of discrimination alleges harassment, disparate treatment, and a hostile work environment. *See* Pl.'s Resp. [26] Ex. J. Other than the alleged failure to promote—which is discussed below—Richardson appears to have exhausted his claims.

As an initial matter, most of these allegations fall short of showing an ultimate employment decision as required to state a prima facie case of discrimination.  *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (holding that actionable discrimination is limited to "ultimate employment decisions such as hiring, granting leave, discharging promoting, and compensation" and not actions that do not "affect job duties, compensation, or benefits") (citations omitted).  For example, Richardson's allegations concerning the requirement that he put his harassment complaint in writing, the way DHS reprimanded him for an alleged derogatory comment, and the denial of training are not sufficient.  *See King v. Louisiana*, 294 F. App'x 77, 84 (5th Cir. 2008) (holding that "poor performance evaluations, unjust criticism, and being placed on probation do not constitute" adverse employment actions for purposes of Title VII); *see also Hockman v. Westward Comm., LLC.*, 122 F. App'x 734, 747 (5th Cir. 2004) (listing discriminatory acts that are not ultimate employment decisions like failure to train, criticism, heavier assignments, etc.).[4]

On the other hand, a denial of a promotion can constitute an adverse employment action under Title VII.  *E.g.*, *Lewallen v. City of Beaumont*, 394 F. App'x 38, 43 (5th Cir. 2010).  But Plaintiff's allegations that he was denied promotions in 2003 and again in 2007 are nevertheless insufficient to survive summary judgment.  The 2003 failure to promote occurred more than 180 days before he filed his EEOC charge on May 21, 2008, and any claim arising out of that averment is time-barred.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002).  As

---

[4] Even if these claims constituted adverse employment actions and individuals outside his sex and race classes were treated better, Richardson offers no record evidence that any such individuals were similarly situated.  As the Fifth Circuit often states, comparators must be "similarly situated" under "nearly identical circumstances."  *Lee v. Kan. City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (citations omitted).

to the 2007 failure to promote, Plaintiff has neither identified what position was being filled nor demonstrated that he was qualified for it. Also missing from his argument is any suggestion that a person outside his protected class received the position instead of him. Plaintiff's conclusory allegations are not sufficient to create a triable issue. *TIG Ins. Co.*, 276 F.3d at 759.

Finally, Richardson offers several leave-related claims. The Fifth Circuit often states that "granting leave" is an example of an ultimate employment decision in the discrimination context. *E.g.*, *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). But not every leave-related issue results in a finding that the employee suffered an ultimate employment decision. *See id.* (holding that placing plaintiff on paid leave was not an ultimate employment decision); *Ellis v. Principi*, 246 F. App'x 867, 870–71 (5th Cir. 2007) (holding that breaching verbal agreement to allow use of leave time for late arrival was not ultimate employment decision). In this case, Richardson's declaration generally states that female employees were treated more favorably in terms of leave but lacks specifics. These specifics are found, however, in DHS's Investigative Report listing this incident as proof of gender-based disparate treatment. *See* Pl.'s Resp. [26] Ex. C at 4, 6. The EEOC likewise found proof of disparate treatment.[5] Viewed in a light most favorable to the non-movant, and out of caution, the Court finds that Richardson has presented a prima facie case of gender-based discrimination as to the leave request. And because

---

[5]Such determinations can have probative value. *See Smith v. Universal Servs., Inc.*, 454 F.2d 154, 157 (5th Cir. 1972). But "the EEOC's findings of racial discrimination are not dispositive on later racial discrimination suits." *Price v. Fed. Express Corp.*, 283 F.3d 715, 725 (5th Cir. 2002); *see also Nunley v. City of Waco*, 440 F. App'x 275, 279–80 (5th Cir. 2011) (quoting *Price*). In this case, the EEOC determination merely adds weight and would survive a hearsay challenge. *See Cruz v. Aramark Servs., Inc.*, 213 F. App'x 329, 332 (5th Cir. 2007).

DHS never presents evidence of a legitimate non-discriminatory reason for its decision, the motion is denied.[6]

    2.  Hostile Work Environment

To establish a prima facie case of hostile work environment, a plaintiff must show that: "(1) [ ]he belongs to a protected class; (2) [he] was subjected to unwelcome sexual or racial harassment; (3) the harassment was based on h[is] sex or race; (4) the harassment affected a term, condition, or privilege of h[is] employment; and (5) h[is] employer knew or should have known of the harassment and failed to take remedial action." *Arensdorf v. Geithner,* 329 F. App'x 514, 517 (5th Cir. 2009) (internal quotations and citations omitted).

DHS primarily asserts that Richardson failed to satisfy the fifth element of the prima facie case because DHS took prompt remedial action to protect him. But "[p]roof of the fifth element is not required where, as here, the purported harasser is a supervisor." *Reine v. Honeywell Int'l Inc.*, 362 F. App'x 395, 397 (5th Cir. 2010). It is clear from Plaintiff's deposition and declaration that the alleged harasser was a supervisor, so the argument fails.

DHS offers a secondary argument that Richardson failed to satisfy the fourth element because the alleged environment was neither severe nor pervasive. *See Septimus v. Univ. of*

---

[6]The only incident of racial discrimination that is cited in the Investigative Report relates to disparity in handling complaints about a white-male co-worker accused of harassing women. Neither the Investigative Report nor Richardson's declaration is sufficient to establish that this was an ultimate employment decision, and the record fails to support a prima facie case of another racially motivated ultimate employment decision. It should be noted, however, that although the Court made every effort to consider the record as a whole, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010) (citations and quotations omitted); *see also* Fed. R. Civ. Pro. 56(c)(1), (3).

*Houston*, 399 F.3d 601, 611 (5th Cir. 2005) (citation omitted) (discussing fourth element).  DHS provides the law but does not analyze the issue.  Regardless, its Investigative Report concludes—based on a list of events—that "[a] Prima Facie case for Hostile Work Environment was documented during the course of this investigation."  Pl.'s Resp. [26] Ex. C at 3.  The EEOC likewise found "reasonable cause to believe" that a hostile work environment existed.  *Id.* Ex. B at 2.  Viewed in a light most favorable to Richardson, the Court finds a question of fact as to whether Plaintiff stated a prima facie case of gender-based hostile work environment.  DHS's motion for summary judgment on the hostile-work-environment claim should be denied.

        3.    Retaliation

Richardson also claims that DHS retaliated against him for engaging in protected activity.  "A plaintiff establishes a prima facie case of retaliation by showing (I) he engaged in a protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link between the protected activity and the adverse employment action."  *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 129 (5th Cir. 2011).  The definition of an adverse employment action in the retaliation context is broader than its discrimination counterpart: a plaintiff in a retaliation case "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  "The purpose of this objective standard is 'to separate significant from trivial harms' and 'filter out complaints attacking the ordinary tribulations of the workplace.'"  *Stewart*, 586 F.3d at 331 (5th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  Thus, even under the more liberal definition of adverse

11

employment action that applies to retaliation claims, "allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions." *King*, 294 F. App'x at 85.

DHS concedes that Richardson satisfies the first element in that he opposed an unlawful employment practice when he complained (verbally in September 2007 and in writing on January 11, 2008) about the way Hodges treated him. DHS argues, however, that Richardson has not alleged an adverse employment action sufficient to satisfy the second element of his retaliation claim. Def.'s Mem. [22], at 10. DHS appeared to reach a different conclusion, however, in its Investigative Report.[7] There, it listed retaliation among the claims it could confirm and noted that "the work environment appeared to have gotten progressively worse" after Richardson engaged in protected activity. Pl.'s Resp. [26] Ex. C at 7. The EEOC likewise found reasonable cause to believe Richardson suffered retaliation. *Id*. Ex. B at 2. Viewed in a light most favorable to Richardson, the Court finds a question of fact as to whether he suffered illegal retaliation. Summary judgment as to the retaliation claim will therefore be denied.

B. State-Law Claims

Plaintiff asserts state-law claims for intentional and negligent infliction of emotional distress against DHS. Although it appears that the claims would fail on the merits, Plaintiff never responded—and therefore conceded—DHS's argument that the state-law claims are time barred. Miss. Code Ann. § 11-46-11(3). The argument otherwise appears meritorious, and the state-law claims are due for dismissal.

---

[7]The format of the Investigative Report is difficult to follow at times, but the Court reviewed the exhibit in a light most favorable to Richardson.

    C.    Punitive Damages

Richardson did not appear to address DHS's argument that it is not subject to punitive damages under Title VII. Richardson therefore concedes the point, and the argument otherwise appears meritorious. The punitive damages claims are due for dismissal.

IV.    Conclusion

The Court has considered all arguments. Those not addressed would not change the result. Accordingly, for the stated reasons, the Court finds that DHS's motion for summary judgment should be granted in part but otherwise denied. Specifically, Plaintiff's state-law claims, punitive-damages claims, as well as his claims brought pursuant to 42 U.S.C. §§ 1981 and 1983 and the Equal Protection Clause, are dismissed with prejudice. Plaintiff's disparate-treatment claim is dismissed with prejudice except for the gender-based disparate-treatment allegations related to granting leave. The motion is likewise denied as to Plaintiff's gender-based hostile-work-environment and retaliation claims.

**SO ORDERED AND ADJUDGED** this the 21st day of February, 2012.

                                      s/ *Daniel P. Jordan III*
                                      UNITED STATES DISTRICT JUDGE